**ORIGINAL**

# In the United States Court of Federal Claims

No. 18-184C

Filed: June 22, 2018

**FILED**

**JUN 2 2 2018**

U.S. COURT OF
FEDERAL CLAIMS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| GARY C. BRESTLE, | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| UNITED STATES, | \* |
| | \* |
| Defendant. | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**Motion to Dismiss; Subject Matter Jurisdiction; Pro Se Plaintiff; In Forma Pauperis; Tort; Criminal Jurisdiction; Eighth Amendment to the United States Constitution; Freedom of Information Act.**

Gary C. Brestle, pro se, Wellington, FL.

**Jeffrey M. Lowry**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were **Tara K. Hogan**, Assistant Director, Commercial Litigation Branch, Department of Justice, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, Department of Justice, and **Chad A. Readler**, Acting Assistant Attorney General.

## OPINION

**HORN, J.**

In the above-captioned case, pro se plaintiff Gary C. Brestle filed a complaint in this court alleging that he had served as an informant for the United States, through the Department of Justice (DOJ). Plaintiff states that he suffered "emotional distress" and "psychological damage" due to the DOJ's failure to apprehend "individuals," on whom plaintiff provided information in his role as an alleged informant. Plaintiff also alleges that he was kept in "solitary confinement" in violation of his rights under the Eighth Amendment to the United States Constitution. Plaintiff seeks an unspecified amount of compensatory and punitive damages.

## FINDINGS OF FACT

Plaintiff alleges that the DOJ has "intentionally and willfully" deprived the "federal court system" from viewing the "documents which illustrate clearly" the "crimes" reported by plaintiff, as an informant, to the DOJ. Plaintiff further alleges that, as a result of the alleged concealment of "documents" by the DOJ, "he and his family live in constant fear of retaliation." Plaintiff claims that on several different occasions, he filed requests under

the Freedom of Information Act (FOIA), seeking "documents" relating to "crimes" which he had reported to the DOJ. Plaintiff states that in his most recent request for production of documents, which was filed with the "Office of Information Policy, DOJ 2016," plaintiff provided the DOJ with:

> the "exact verbiage" contained within DOJ's emails and letters, which illustrate without any ambiguity that individuals within the United States, South America, and the Middle East where at least one of those individuals was designated by the DOJ as an associate of the **AL-QAEDA** terrorist organization, and that the same individual was also associated with the murder of a jurors father in the US Virgin Islands, as stated by the "DOJ." Another of the more than seven conspirators, (from the Middle East) was in fact investigated by the United Nations to determine if that individual was an actor in the assassination of the Prime Minister of Lebanon Rafik Harrarri.[1]

(emphasis in original). According to plaintiff, "[a]ll documents" confirming that "[t]hese individuals engaged in a money laundering scheme, which involved the paying off of bank officials at Banco Santander Bank in Brazil, where US Citizens were defrauded within the scheme," have been "repeatedly withheld from the courts." Plaintiff alleges that these "individuals were not apprehends, even though DOJ classified the documents as j(2) FOIA documents, which indicates that criminals 'should have been' apprehended." Plaintiff claims that plaintiff "controls all of the FOIA requests made as previously stated, The facts Plaintiff stated to the DOJ were crystal clear, pointing out dates, times, and individuals names." Plaintiff also alleges that "[t]hese individuals" have contacted one of his family members, and, "[d]ue to the fact that these individuals . . . were not apprehended," plaintiff has suffered "emotional distress" and "psychological damage." Additionally, plaintiff alleges that he was placed into "'solitary confinement' (cell 302), when he in fact would not cooperate with the destruction of certain records." Plaintiff asserts that being placed in "'solitary confinement'" violated his rights under the Eighth Amendment to the United States Constitution.

On February 5, 2018, plaintiff filed his complaint in the above-captioned case in this court. In his complaint, plaintiff contends that "[t]he 'Tucker Act' provides the proper vehicle for Plaintiff. See 28 U.S.C. 1491, 1346(a)(2)." Plaintiff argues that his "claims are cognizable to render the United States liable for damages under the Tucker Act," and he seeks monetary damages in an unspecified amount as compensatory and punitive damages. Also on February 5, 2018, plaintiff filed a document titled "PERMISSION TO PROCEED IN FORMA PAUPERIS," as plaintiff claims to have "no other source of income other than social security." The court notes that plaintiff has not submitted a completed copy of the United States Court of Federal Claims' Application to Proceed In Forma Pauperis, and simply makes a statement in the document he titles "PERMISSION TO

---

[1] Plaintiff's capitalization, choice of words, spelling errors, grammatical errors, and fragments of sentences, which appear throughout plaintiff's complaint, have been included in this opinion when quoted unchanged.

PROCEED IN FORMA PAUPERIS" that plaintiff is "requesting permission to proceed in forma pauperis in the attached action."

On March 16, 2018, plaintiff filed a document titled "PERMISSION TO AMEND," wherein plaintiff requests "permission to amend Plaintiff's initial filing," which was submitted to the court on February 5, 2018, "with the following facts, which the court will find clear and convincing." Plaintiff alleges that "[i]n January of 2012, and again in September of 2013 the United States proferred a series unsworn declarations pursuant to Title 28 U.S.C. 1746, illustrating that Plaintiff's life could be endangered, or at the very least face physical injury due to his role as a government informant." Plaintiff further alleges that:

> Facts also illustrate that the United States altered documents, and ordered the destruction of other document. These facts were corroborated with inter-agency memos. Plaintiff requested on at least seven different occasions to provide a "polygraph test" which would be in compliance with policy, those requests were ironically denied.

On March 23, 2018, the court issued an Order denying plaintiff's March 16, 2018 "PERMISSION TO AMEND" his complaint, because plaintiff had not included a proposed amended complaint with his motion to amend the complaint. The court also stated in the March 23, 2018 Order that only grounds which are within the court's jurisdiction are appropriate for an amended complaint, and plaintiff should consider, prior to filing a new motion to amend the complaint, whether plaintiff's claims fall within the jurisdiction of the court.

On March 23, 2018, defendant filed "DEFENDANT'S MOTION TO DISMISS" plaintiff's complaint pursuant to Rule 12(b)(1) (2017) of the Rules of the United States Court of Federal Claims (RCFC), arguing that this court lacks subject matter jurisdiction over plaintiff's claims. (capitalization in original). Defendant asserts that plaintiff's claim seeking monetary and punitive damages resulting from "emotional distress" and "psychological damage" should be dismissed because this court lacks jurisdiction to adjudicate tort claims. Defendant also argues that this court does not have jurisdiction to entertain plaintiff's claim "that he is or was being kept in solitary confinement in violation of the Eighth Amendment to the United States Constitution" because the Eighth Amendment is not a money-mandating source of law. Further, defendant contends that this court lacks jurisdiction over plaintiff's claims arising under the FOIA. Finally, defendant argues that 28 U.S.C. § 1346(a)(2) (2012), which plaintiff cites in his complaint as a basis for jurisdiction in this court, "only applies to district courts," and does not apply to the United States Court of Federal Claims.

On April 3, 2018, plaintiff submitted a filing to this court titled "AMEND PLEADINGS PURSUANT TO RULE 15(A)(1), F.R.CV.P." Additionally, plaintiff submitted a copy of his February 5, 2018 complaint and a copy of his February 5, 2018 "PERMISSION TO PROCEED IN FORMA PAUPERIS" as attachments to his April 3, 2018 submission. The Clerk's Office did not file plaintiff's submissions because plaintiff's submission did not

3

comply with the RCFC 5.5(d)(2) (2017), under which a party is required to file an original and two copies of any filing; RCFC 5.5(g) (2017), which requires that the name of the judge assigned to the case be included below the docket number in all filings; RCFC 5.3 (2017), which requires that a proof of service, showing the day and manner of service, the person or entity served, and the method of service employed be attached to the end of any original document and to any copies of that document, by the party executing a certificate of service; RCFC 11 (2017), which requires that every pleading, written motion, and other paper must be signed by a party personally if the party is unrepresented.

On April 10, 2018, plaintiff filed a document titled "OBJECTION, RE: MOTION TO DISMISS." In his April 10, 2018 objection, plaintiff alleges that defendant fails to mention "the fact that Federal codes were violated pursuant to the Federal Rules of Criminal Procedure under Titles 18 Sections 1505, 1513 and various other criminal statutes," in order to protect "individuals employed by defendant" from any "punishment or freedom from the injurious consequences of this action." Plaintiff claims in his April 10, 2018 objection that he was "'recruited'" by defendant

> to report crimes involving (a) money laundering scheme, (b) defrauding U.S. Citizens, (c) paying off of bank officials to subvert international banking laws, (d) unlawful entry of illigal immigrants to the U.S. etc., and when Plaintiff became astounded of Defendant's lack to take action, Plaintiff was placed in solitary confinement and told; "if you do not allow [us] to destroy these documents, then [you] will not leave solitary confinement."

(alterations in original). Plaintiff further states in his "OBJECTION, RE: MOTION TO DISMISS" that "the infliction of emotional distress is real, and that all the statutes under the sun do not erase this emotional distress, because Defendant United States did not want to live up to it's contract with Plaintiff."[2] Plaintiff requests that this court deny "DEFENDANT'S MOTION TO DISMISS" for lack of subject matter jurisdiction because "[t]his Court clearly has jurisdiction which is authorized by Constitution, and statute."

On April 16, 2018, defendant filed a "DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, AND DEFENDANT'S OPPOSITION TO MOTION TO AMEND COMPLAINT," in which defendant contends that neither plaintiff's complaint nor his objection to defendant's motion to dismiss establish any basis for jurisdiction in this court. (capitalization in original). Defendant notes that plaintiff, in his April 10, 2018 objection, alleges "that the 'United States did not want to live up to it[s] contract with Plaintiff'" and argues that "this allegation is not in the complaint and does not identify any contract. Because this [the contract allegation] was not pled and is too vague to be well-pled, it should be disregarded." (first alteration in original). Defendant states that plaintiff's "new motion to amend shows no proposed amended complaint and no basis for

---

[2] In his complaint, plaintiff did not allege that he had a contract with the United States. The word "contract" is mentioned for the first time in plaintiff's April 10, 2018 "OBJECTION, RE: MOTION TO DISMISS."

jurisdiction, either."[3] Defendant further states that plaintiff's "complaint alleges only torts, and violations of the Eighth Amendment and FOIA," and that "none of these offers any basis for jurisdiction" in the United States Court of Federal Claims. In addition, defendant asserts that plaintiff's "new motion is essentially the same as his March 16, 2018 motion to amend," and that plaintiff's "new motion" does not include "any proposed amended complaint" and alleges only "criminal or tortious misconduct over which the Court has no jurisdiction."

On May 4, 2018, the court received from plaintiff a document titled "REQUEST FOR THIRTY DAY DELAY," for "returning the documents filed in accordance with the rules of this Court," and that "he be permitted to refile by the 28th day of May 2016." On May 10, 2018, the court issued an Order regarding plaintiff's "REQUEST FOR THIRTY DAY DELAY," stating that "[i]f plaintiff intends to submit additional documents to the court, plaintiff shall file the additional documents in accordance with the RCFC on or before Thursday, May 24, 2018." (emphasis omitted).

On June 7, 2018, defendant filed a "DEFENDANT'S NOTICE OF DOCUMENTS RECEIVED FROM PLAINTIFF," wherein defendant notified the court that, "on or around May 31, 2018," defendant had received documents from plaintiff which "are not yet reflected on this case's docket." (capitalization in original). In its notice, defendant stated that it "does not intend to file with the Court any response to these documents." Attached to defendant's June 7, 2018 notice were the filings defendant had received from plaintiff, which included a document titled, "MOTION IN RESPONSE TO THE COURT'S ORDER," a copy of plaintiff's February 5, 2018 complaint,[4] a document titled "AMEND PLEADINGS PURSUANT TO RULE 15(a)(1), F.R.CV.P," and a document titled "SUPPLEMENT, PLEADING SPECIAL MATTERS RULE 9(b)."

In plaintiff's "MOTION IN RESPONSE TO THE COURT'S ORDER," which was attached to defendant's June 7, 2018 notice, plaintiff states that plaintiff was "responding to the Court's Order dated May 10, 2018 stipulating that Plaintiff must file the proper number of copies pursuant to Rule 5.5(d)(2)(2017)(RCFC), and make proper service of all documents (including request to proceed IFP), on Defendant United States."

---

[3] The "new motion to amend" referred to by the defendant appears to be plaintiff's April 3, 2018 submission titled "AMEND PLEADINGS PURSUANT TO RULE 15(A)(1), F.R.CV.P."

[4] The copy of plaintiff's February 5, 2018 complaint attached to the "MOTION IN RESPONSE TO THE COURT ORDER" omitted the last sentence in plaintiff's February 5, 2018 complaint, which provided that "[p]laintiff's claims are cognizable to render the United States liable for damages under the Tucker Act, and as a result, Plaintiff seeks both compensatory, and punitive damages in this federal court," but otherwise was the same as the previously filed complaint.

Additionally, in plaintiff's "AMEND PLEADINGS PURSUANT TO RULE 15(A)(1), F.R.CV.P,"[5] which was attached to defendant's June 7, 2018 notice, plaintiff states:

> In 2012, and again in 2013 Special Assistant United States Attorney Michelle Seo located at the U.S. Department of Justice Civil Division, P O Box 480 Ben Franklin Station Washington, D.C. 20044, contacted Ms. Christine Greene, a Department of Justice employee in Coleman, Florida requesting two separate unsworn declarations (signed by Mrs. Greene on both occasions), which articulated that there were illegal activities which occurred, and that it was of extreme importance that Plaintiff Brestle be protected. Here, Plaintiff believes that the office of the U.S. Attorney and Ms. Seo are both located within this Court's jurisdiction, and were acutely aware of the facts stated in Ms. Greene's unsworn declarations.

In plaintiff's "AMEND PLEADINGS PURSUANT TO RULE 15(A)(1), F.R.CV.P," plaintiff alleges that "Ms. Green's Vaughn Index on Plaintiff (forwarded to Special Assistant U.S. Attorney Seo, in Washington D.C.), which clearly spoke to Plaintiff's life being endangered." Plaintiff also alleges that he "clearly articulated in the attached initial complaint that individuals involved in the conspiracy against the United States, were (a) not apprehended, and (b) were individuals who were known to have the ability to cause physical harm or death to Plaintiff." Plaintiff states that he has "set forth facts supported with conclusive evidence" in his motion to "AMEND PLEADINGS PURSUANT TO RULE 15(A)(1), F.R.CV.P," which, according to plaintiff, bring his "claims within the jurisdiction of this honorable court."

In plaintiff's "SUPPLEMENT, PLEADING SPECIAL MATTERS RULE 9(B)," plaintiff alleges that "certain individuals who committed crimes against the United States of America contacted a family member, seeking $400,000.00 in cash, known by Defendant. ('Tell them the money is coming from your daughter')." Plaintiff also alleges that "[o]n several occasions Special Assistant U.S. Attorney Seo, Butler, and several other SAUSA possessed knowledge that Plaintiff's daughter was contacted, and that there existed other documents illustrating the intention or desire to do evil by the individuals not apprehended." Additionally, plaintiff states:

> On several documents located within the Department of Justice, P.O. Box 480 Ben Franklin Station, Washington, D.C.. 20044, and other sub agencies located within the jurisdiction of this court, one document in particular states; "two exemptions (b6) and (b)(7)(c) were used on the documents to protect the name and phone number of a staff member and to protect Brestle." The documents went on to say, "Not only could these parties face reputational harm, but they could also face acts of reprisal." SIC. The document went on to say, "illegal activities occurred."

---

[5] As discussed above, plaintiff's April 3, 2018, submission titled, "AMEND PLEADINGS PURSUANT TO RULE 15(A)(1), F.R.CV.P" was not originally filed and was returned to plaintiff because the submission did not comply with the rules of this court.

Plaintiff argues that plaintiff "is not before this Court seeking justice for the coverup, or the violations of the Federal Criminal Codes, and Statutes by Defendant, Plaintiff is here seeking an award of both punitive and compensatory damages for the intentional neglect on the part of Defendant, by placing both Plaintiff and his family at risk of 'reprisal'," under an unspecified "Rule 9(b)," which, according to plaintiff, "states the following; 'Fraud or Mistake; Condition of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" In addition, plaintiff attached to his filing titled "SUPPLEMENT, PLEADING SPECIAL MATTERS RULE 9(B)" redacted notices of electronic filing from a case filed in the United States District Court for the Southern District of Georgia. Plaintiff, without explaining how the attached redacted notices of electronic filing are relevant to plaintiff's claims in the above-captioned case, asserts that "[t]he redactions made on the attached exhibits illustrate that Plaintiff's claims are not speculation or conjecture."

Subsequently, on June 11, 2018, plaintiff attempted to file with the court the same four filings attached to defendant's June 7, 2018 notice, as well as a copy of plaintiff's February 5, 2018 filing titled "PERMISSION TO PROCEED IN FORMA PAUPERIS." On June 12, 2018, the court issued an order filling defendant's June 7, 2018 "DEFENDANT'S NOTICE OF DOCUMENTS RECEIVED FROM PLAINTIFF" and plaintiff's fillings that were attached to defendant's June 7, 2018 notice. (capitalization in original). The court instructed the Clerk's Office to return plaintiff's June 11, 2018 submissions because the submissions did not comply with RCFC 5.3, which requires proof of service, RCFC 11, and RCFC 24(c) (2017), which requires that a motion to intervene be served on parties in accordance with RCFC 5, and because the documents were duplicative of documents already in the record.

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by pro se plaintiffs is sufficient to invoke review by a court, pro se plaintiffs are titled to a more liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to

a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

As noted above, on February 5, 2018, plaintiff filed a "PERMISSION TO PROCEED IN FORMA PAUPERIS." In order to provide access to this court for those who cannot pay the filing fees mandated by RCFC 77.1(c) (2017), 28 U.S.C. § 1915 (2012) permits a court to allow a plaintiff to file a complaint without payment of fees or security, under specific circumstances.  Section 1915(a)(1) states that:

> Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner[6] possesses [and] that the person is unable to pay

---

[6] A number of courts have reviewed the words of 28 U.S.C. § 1915(a)(1), regarding in forma pauperis applications by non-prisoner litigants in federal courts, and have concluded that Congress did not intend for non-prisoners to be barred from being able to proceed in forma pauperis in federal court. See, e.g., Haynes v. Scott, 116 F.3d 137, 139 (5th Cir. 1997) (noting that "[t]here is no indication in the statute or the legislative history of [§ 1915] that Congress meant to curb [in forma pauperis] suits by nonprisoners."); Floyd v. United States Postal Serv., 105 F.3d 274, 275-76 (6th Cir.), reh'g denied (6th Cir. 1997); Schagene v. United States, 37 Fed. Cl. 661, 663 (1997), appeal dismissed, 152 F.3d 947 (Fed. Cir. 1998); see also In re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997) (discussing how to administer in forma pauperis rights to a non-prisoner, thereby acknowledging the rights of non-prisoners to apply for in forma pauperis status); Leonard v. Lacy, 88 F.3d 181, 183 (2d Cir. 1996) (using "sic" following the word "prisoner" in 28 U.S.C. § 1915(a)(1) seemingly to indicate that the use of that word was too narrow); Lister v. Dep't of Treasury, 408 F.3d 1309, 1312 (10th Cir. 2005) ("Section 1915(a) applies to all persons applying for [in forma pauperis] status, and not just to prisoners."); Manning v. United States, 123 Fed. Cl. 679, 682-83 (2015) ("The Federal Circuit has in effect endorsed this construction of Section 1915 in a non-precedential decision. See Jackson v. United States, 612 Fed. Appx. 997 at *2 (Fed. Cir. May 18, 2015) (affirming a Court of Federal Claims dismissal of a non-prisoner's complaint for frivolousness under Subparagraph 1915(e)(2)(B))."); Smith v. United States, 113 Fed. Cl. 241, 243 (2013);

such fees or give security therefor.  Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1). Therefore, the statute at 28 U.S.C. § 1915(a)(1) requires a person to submit an affidavit with a statement of all the applicant's assets, and that the affidavit state the nature of the action, defense or appeal and affiant's belief that the person is titled to redress. See id.

When enacting the in forma pauperis statute, 28 U.S.C. § 1915, Congress recognized that "'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)); see also McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007).  Accordingly, Congress included subsection (e) in the in forma pauperis statute, which allows courts to dismiss lawsuits determined to be "frivolous or malicious." 28 U.S.C. § 1915(e).  The United States Supreme Court has found that "a court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless' . . . a category encompassing allegations that are 'fanciful' . . . 'fantastic' . . . and 'delusional . . . .'" Denton v. Hernandez, 504 U.S. at 32-33 (internal citations omitted); see also Floyd v. United States, 125 Fed. Cl. 183, 191 (2016); Jones v. United States, 122 Fed. Cl. 543, 545 (2015); McCullough v. United States, 76 Fed. Cl. At 3 ; Schagene v. United States, 37 Fed. Cl. at 663.  Courts, however, should exercise caution in dismissing a case under section 1915(e) because a claim that the court perceives as unlikely to be successful is not necessarily frivolous.  See Denton v. Hernandez, 504 U.S. at 33.  As stated by the United States Supreme Court, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Id.

The standard in 28 U.S.C. § 1915(a)(1) for in forma pauperis eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and therefore, whether to allow a plaintiff to proceed in forma pauperis is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. See, e.g., Rowland v. Cal. Men's Colony,

---

Powell v. Hoover, 956 F. Supp. 564, 566 (M.D. Pa. 1997) (holding that a "fair reading of the entire section [28 U.S.C. § 1915(a)(1)] is that it is not limited to prisoner suits."). Moreover, 28 U.S.C. § 1915(a)(1) refers to both "person" and "prisoner." The word "person" is used three times in the subsection, while the word "prisoner" is used only once. This court, therefore, finds that the single use of the word "prisoner" in the language of 28 U.S.C. § 1915(a)(1) was not intended to eliminate a non-prisoner from proceeding in federal court in forma pauperis, provided that the civil litigant can demonstrate appropriate need. Any other interpretation is inconsistent with the statutory scheme of 28 U.S.C. § 1915.

<u>Unit II Men's Advisory Council</u>, 506 U.S. 194, 217-18 (1993); <u>Roberson v. United States</u>, 115 Fed. Cl. 234, 239, <u>appeal</u> <u>dismissed</u>, 556 F. App'x 966 (Fed. Cir. 2014); <u>Fuentes v. United States</u>, 100 Fed. Cl. 85, 92 (2011). This court and its predecessors were established to make available a user friendly forum in which plaintiffs can submit their legitimate claims against the sovereign, limited only by the legislative decision to waive sovereign immunity as to the types of claims allowed. In fact, prominently posted at the entrance to this courthouse are the words of Abraham Lincoln: "It is as much the duty of government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between private individuals."

Interpreting an earlier version of the <u>in</u> <u>forma</u> <u>pauperis</u> statute, the United States Supreme Court offered the following guidance:

> We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty "pay or give security for the costs . . . and still be able to provide" himself and dependents "with the necessities of life." To say that no persons are titled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution. We think a construction of the statute achieving such consequences is an inadmissible one.

<u>Adkins v. E.I. DuPont de Nemours & Co.</u>, 335 U.S. 331, 339-40 (1948) (omission in original). In <u>Fiebelkorn v. United States</u>, for example, a Judge of the United States Court of Federal Claims indicated that:

> [T]he threshold for a motion to proceed <u>in</u> <u>forma</u> <u>pauperis</u> is not high: The statute requires that the applicant be 'unable to pay such fees.' 28 U.S.C. § 1915(a)(1). To be 'unable to pay such fees' means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.

<u>Fiebelkorn v. United States</u>, 77 Fed. Cl. 59, 62 (2007); <u>see</u> <u>also</u> <u>McDermott v. United States</u>, 130 Fed. Cl. 412, 414 (2017) (quoting <u>Fiebelkorn v. United States</u>, 77 Fed. Cl. at 62); <u>Fuentes v. United States</u>, 100 Fed. Cl. at 92; <u>Brown v. United States</u>, 76 Fed. Cl. 762, 763 (2007); <u>Hayes v. United States</u>, 71 Fed. Cl. 366, 369 (2006).

In his "PEMISSION TO PROCEED IN FORMA PAUPERIS," pro se plaintiff Gary Brestle indicates that he receives an amount of $1270.00 as monthly income from "social security," out of which he makes payments towards "car payment, insurance, additional living expenses." Plaintiff, however, has failed to provide any other details regarding his expenses or income. As noted above, plaintiff has not completed and submitted a copy of the United States Court of Federal Claims' Application to Proceed In Forma Pauperis form. Without more information on plaintiff's economic status, including knowing the answers to the remaining questions contained in the court's Application to Proceed In Forma Pauperis form, such as whether plaintiff is employed, or has within the past twelve months received money in the form of rent, investments, gifts, or other sources, it is difficult to make a determination regarding plaintiff's qualifications to proceed in forma pauperis. Even if plaintiff was qualified to proceed in forma pauperis, however, his application is moot because, as discussed below, his complaint is dismissed for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)). The Tucker Act, 28 U.S.C. § 1491 grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the

Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v.] Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v.

United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Price v. United States, 133 Fed. Cl. 128, 130 (2017); Peoples v. United States, 87 Fed. Cl. 553, 565-66 (2009).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2017); Fed. R. Civ. P. 8(a)(1), (2) (2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

In the above-captioned case, plaintiff seeks compensatory and punitive damages resulting from "emotional distress" and "psychological damage" allegedly caused by the defendant's alleged failure to apprehend certain "individuals." Plaintiff asserts that he served as an informant to the DOJ, wherein he reported "crimes" and provided information

13

about those "individuals" who were not apprehended. Additionally, plaintiff alleges that the DOJ has "intentionally and willfully" concealed the information provided by plaintiff, and, as a result of the DOJ's alleged concealment, plaintiff has suffered "emotional distress" and "psychological damage." In "DEFENDANT'S MOTION TO DISMISS," defendant argues that this court lacks jurisdiction over plaintiff's claims for "emotional distress" and "psychological damage." (capitalization in original). According to defendant:

> Mr. Brestle's complaint seeks monetary and punitive damages resulting from the "emotional distress and psychological damage" experienced as a result of the Government's alleged failure to apprehend certain individuals. However, this Court lacks jurisdiction to entertain tort claims, such as a claim for the intentional infliction of emotional distress. 28 U.S.C. § 1491(a)(1); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993). Accordingly this claim should be dismissed.

(internal references omitted).

A claim involving intentional infliction of emotional distress is a tort claim. This court, however, lacks jurisdiction over tort claims, including claims for intentional infliction of emotional distress. See 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction . . . in cases not sounding in tort."); see also Keene Corp. v. United States, 508 U.S. at 214 ("[T]ort cases are outside the jurisdiction of the Court of Federal Claims today."); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort." (citing 28 U.S.C. § 1491(a)(1))); Trafny v. United States, 503 F.3d 1339, 1340 (Fed. Cir. 2007) ("The court was also correct to hold that it lacks jurisdiction over tort claims."); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997) ("The Court of Federal Claims is a court of limited jurisdiction. It lacks jurisdiction over tort actions against the United States."); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Rohland v. United States, 136 Fed. Cl. 55, 65 (2018) ("[T]his court lacks jurisdiction to entertain claims sounding in tort."); Kant v. United States, 123 Fed. Cl. 614, 616 (2015); Fullard v. United States, 77 Fed. Cl. 226, 230 (2007) ("This court lacks jurisdiction over plaintiff's conspiracy claim because the Tucker Act specifically states that the Court of Federal Claims does not have jurisdiction over claims 'sounding in tort.'"); Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006); Gates v. United States, 33 Fed. Cl. 9, 12 (1995) ("With respect to claims for emotional distress, the court has long stated that it does not have jurisdiction to hear such claims because they sound in tort."). In contrast, "district courts have exclusive jurisdiction to consider tort claims against the United States that fall within the purview of the FTCA [Federal Tort Claims Act]." Bobka v. United States, 133 Fed. Cl. 405, 412 (2017); see also Rohland v. United States, 136 Fed. Cl. at 65 ("Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680, jurisdiction over tort claims against the federal government lies exclusively in federal district courts." (citing U.S. Marine, Inc. v. United States, 722 F.3d 1360, 1365-66 (Fed. Cir. 2013))). Because plaintiff's allegations of

14

infliction "emotional distress" causing "psychological damage" sound in tort, those claims must dismissed for lack of jurisdiction.

Additionally, plaintiff alleges that his rights under the Eighth Amendment to the United States Constitution were violated. Plaintiff alleges, without much detail, that he was wrongfully placed into "'solitary confinement'" when he would "not cooperate with the destruction of certain records," which violated his rights under the Eighth Amendment to the United States Constitution. Defendant responds:

> Mr. Brestle also makes a vague claim that he is or was being kept in solitary confinement in violation of the Eighth Amendment, this Court does not have jurisdiction to entertain that claim either because the Eighth Amendment is not money-mandating. Trafny v. United States, 503 F.3d 1339, 1340 (Fed. Cir. 2007).

Plaintiff's alleged Eighth Amendment violation also fails because this court does not have jurisdiction over claims brought under the Eighth Amendment to the United States Constitution. See Trafny v. United States, 503 F.3d at 1340 ("The Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment, as the Eighth Amendment 'is not a money-mandating provision.'" (citations omitted)); Mitchell v. United States, 136 Fed. Cl. 286, 289 (2018) (concluding that the court lacked jurisdiction over Eighth Amendment claims (citing Trafny v. United States, 503 F.3d at 1340)); Godfrey v. United States, 131 Fed. Cl. 111, 120 (2017) ("But, the Fourth, Sixth and Eighth Amendments, and the Due Process Clauses of the Fifth and Fourteenth Amendments are not money mandating." (citing Trafny v. United States, 503 F.3d at 1340)); Hernandez v. United States, 93 Fed. Cl. 193, 198 (2010) ("Plaintiff avers that his rights under the First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Fourteenth, and Fifteenth Amendments were violated. None of these claims allege a violation for which money damages are mandated."); Tasby v. United States, 91 Fed. Cl. 344, 346 (2010) ("[T]he Eighth Amendment prohibitions of excessive bail or fines, as well as cruel and unusual punishment, are not money-mandating." (citation omitted)).

Additionally, plaintiff seeks relief regarding his FOIA requests and alleges that on several different occasions, plaintiff filed requests seeking "documents" relating to "crimes" which plaintiff had reported to the DOJ as an informant. In "DEFENDANT'S MOTION TO DISMISS," defendant asserts that, "[t]o the extent Mr. Brestle seeks relief under FOIA, this Court lacks jurisdiction to entertain FOIA claims. See Bernard v. United States, 59 Fed. Cl. 497, 503, aff'd, 98 Fed. Appx. 860 (Fed. Cir. 2004)." (internal references omitted) (capitalization in original). In "DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, AND DEFENDANT'S OPPOSITION TO MOTION TO AMEND COMPLAINT," defendant contends that plaintiff has not provided any explanation as to why this court has jurisdiction over plaintiff's FOIA claim. (capitalization in original).

The statute regarding requests under FOIA, 5 U.S.C. § 552 (2012), provides:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

See 5 U.S.C. § 552(a)(4)(B). As a judge on this court has explained, plaintiff's claim under the FOIA fails because "[t]he FOIA lacks any money-mandating provisions. Furthermore, the FOIA expressly provides for jurisdiction in 'the district court of the United States . . . .' [T]he Court of Federal Claims is not a district court. Thus, the court lacks jurisdiction to consider the merits of any FOIA claim." McNeil v. United States, 78 Fed. Cl. 211, 225 (2007) (citations omitted); see also Treece v. United States, 96 Fed. Cl. 226, 232 (2010); Bernard v. United States, 59 Fed. Cl. 497, 503 (2004). Therefore, plaintiff's claim under the FOIA also is dismissed.

In his April 10, 2018 objection to "DEFENDANT'S MOTION TO DISMISS," plaintiff also argues that this court "clearly has jurisdiction which is authorized by Constitution" and cites "the Federal Rules of Criminal Procedure under Titles 18 Sections 1505, 1513 and various other criminal statutes." (capitalization in original). In "DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, AND DEFENDANT'S OPPOSITION TO MOTION TO AMEND COMPLAINT," filed April 16, 2018, defendant argues that plaintiff "vaguely" alleges "criminal or tortious misconduct over which the Court has no jurisdiction." (capitalization in original).

Rule 1(a)(1) of the Federal Rules of Criminal Procedure does not indicate that the Federal Rules of Criminal Procedure apply to the United States Court of Federal Claims, but, rather, states that the Federal Rules of Criminal Procedure "govern the procedure in all criminal proceedings in the United States district courts, the United States court of appeals, and the Supreme Court of the United States." See Fed. R. Crim. P. 1(a)(1) (2018). Moreover, the jurisdiction of the United States Court of Federal Claims does not include jurisdiction over criminal causes of action. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994); see also Smith v. United States, 134 Fed. Cl. 689, 692 (2017) ("[T]he Court of Federal Claims lacks jurisdiction to entertain criminal matters, such as claims arising under the federal criminal code or claims regarding the conduct of criminal proceedings." (citing Joshua v. United States, 17 F.3d at 379-80)); Khalil v. United States, 133 Fed. Cl. 390, 392 (2017) ("This court, however, 'has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code.'" (quoting Joshua v. United States, 17 F.3d at 379)); Cooper v. United States, 104 Fed. Cl. 306, 312 (2012) (holding that "this court does not have jurisdiction over [plaintiff's] claims because the court may review neither criminal matters, nor the decisions of district courts." (internal citations omitted)); Mendes v. United States, 88 Fed. Cl. 759, 762, appeal dismissed, 375 F. App'x 4 (Fed. Cir. 2009); Hufford v. United States, 87 Fed. Cl. 696, 702 (2009) (stating that the United States Court of Federal Claims lacked jurisdiction over claims arising from the violation

of a criminal statute); <u>Fullard v. United States</u>, 78 Fed. Cl. 294, 301 (2007) ("Plaintiff alleges criminal fraud, a subject matter over which this court lacks jurisdiction." (citing 28 U.S.C. § 1491)); <u>McCullough v. United States</u>, 76 Fed. Cl. 1, 4 (2006) (finding that the court lacked jurisdiction to consider plaintiff's criminal claims), <u>appeal dismissed</u>, 236 F. App'x 615 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir.), <u>cert. denied</u> 552 U.S. 1050 (2007).[7] Any claim asserted by plaintiff asserting a claim based on criminal activity or implicating the Federal Rules of Criminal Procedure, therefore, also must be dismissed.

Finally, in plaintiff's April 10, 2018 "OBJECTION, RE: MOTION TO DISMISS," plaintiff for the first time alleges the existence of a contract, stating that defendant "did not want to live up to it's contract with Plaintiff." Not only is this the first specific reference by plaintiff to a contract, but plaintiff also has offered no evidence indicating that he entered into a contract with the United States. In order to properly allege a contract, the complaint must allege the elements of a contract. "[A]ny agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government." <u>Trauma Serv. Grp. v. United States</u>, 104 F.3d 1321, 1326 (Fed. Cir. 1997); <u>see also</u> <u>Russell Corp. v. United States</u>, 537 F.2d 474, 482, 210 Ct. Cl. 596, 608 (1976) ("For there to be an express contract, the parties must have intended to be bound and must have expressed their intention in a manner capable of understanding. A definite offer and an unconditional acceptance must be established."). In the above-captioned case, plaintiff's complaint has not alleged any of the basic elements of a contract, including: offer; acceptance; consideration; or that a government representative with actual authority signed a contract with plaintiff. Nor has plaintiff even alleged when the contract might have been executed, or what were the terms of the alleged contract. Even in his April 10, 2018 objection, which, for the first time, uses the word contract, plaintiff does not allege the elements of a contract. The court, therefore, does not consider plaintiff's bald, contract allegation and any such claim must be dismissed at this time.

## CONCLUSION

Defendant's motion to dismiss is **GRANTED**. Plaintiff's complaint is **DISMISSED** for lack of jurisdiction. The Clerk's Office shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**

---

[7] The court notes, that recently the United States Court of Appeals for the Federal Circuit, in an unpublished opinion, restated that "[t]he Court of Federal Claims likewise lacks jurisdiction to adjudicate claims brought under federal or state criminal statutes." <u>Spitters v. United States</u>, 710 F. App'x 896, 897 (Fed. Cir. 2018) (citing <u>Joshua v. United States</u>, 17 F.3d at 379).